IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT CURTIS, as heir at law and administrator of the ESTATE OF JOSEPH CURTIS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 10 C 4570 |
| TRANSCOR AMERICA, LLC, | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Before the court are two motions related to Plaintiff Brett Lee Curtis' attempt to seek punitive damages in his wrongful death suit against the prisoner transport company that had custody of his father on the day he died. For the reasons stated herein, "Plaintiff's Motion to Amend Complaint and Scheduling Order to Add a Punitive Damage Claim under Tennessee Law" (Dkt. No. 143 ("Pl.'s Mot. to Amend")), is denied. The court reserves ruling, however, as to whether Curtis can nonetheless pursue punitive damages under Fed. R. Civ. P. 54(c). Additionally, "Plaintiff's Motion for Determination of Choice of Law Relating to the Issue of Punitive Damages" (Dkt. No. 141 ("Pl.'s Choice of Law Mot.")), is granted, and the court will apply Tennessee law to the issue of punitive damages.

BACKGROUND

On June 23, 2009, Joseph Curtis ("Joseph") was transported from the federal prison in Leavenworth, Kansas, through Illinois, to the federal prison in Terre Haute, Indiana (Dkt. No. 1, Ex. A. ("Pl.'s Compl." ¶ 3.).) According to an autopsy, Joseph died that day as a result of

heatstroke. (*Id.* ¶ 14.) During the move, he was in the custody and control of TransCor America, LLC ("TransCor"), a prisoner transport company. (*Id.* ¶¶ 2–4.) According to Plaintiff's complaint, the outside temperature along the transport route exceeded 95 degrees, and the air conditioning in the transport van was not functioning. (*Id.* ¶¶ 6–7.)

Joseph's son, Brett Lee Curtis ("Curtis"), acting as Joseph's heir at law and the administrator of his estate, filed suit against TransCor on May 26, 2010, in the Circuit Court of Cook County. TransCor then removed the case to this court. (Dkt. No. 1.) This court previously denied a motion by TransCor to transfer this case to the Southern District of Indiana, finding that the question of venue was "inextricably intertwined with the central factual issues of Plaintiff's claims." (Dkt. No. 32.) In their briefing on the motion to transfer venue, the parties identified a likely conflict over whether Indiana or Illinois law governs this dispute. Curtis argued that Illinois law should apply (Dkt. No. 17-1, at 2), while TransCor argued that Indiana law should apply. (Dkt. No. 9.) Curtis did not suggest at that time that Tennessee law would apply to his claims or any damages issue.

The scheduling order in this case provided that Curtis had until June 15, 2011, to amend his complaint. (Dkt. No. 41.) Discovery in this case closed on Jan. 15, 2012. (*Id.*) The final pretrial order, motions in limine, and dispositive motions on the choice-of-law issue are due to be filed on April 20, with trial set for May 7. (*Id.*)

Curtis now seeks to amend his complaint to add a punitive damage claim, which he argues is governed by Tennessee law because TransCor is headquartered in Tennessee and because much of the allegedly negligent and reckless conduct occurred there. (Pl.'s Mot. to Amend 2.) Tennessee law allows for the imposition of punitive damages in wrongful death

2

cases if there is clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 531 (Tenn. 2008). A person acts recklessly, under Tennessee law, when "the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.* (internal citations omitted.) Curtis acknowledges that neither Indiana nor Illinois law allow for the imposition of punitive damages in wrongful death cases. *See Mattyasovszky v. W. Town Bus Co.*, 313 N.E.2d 496, 502 (Ill. App. Ct. 1974); Ind. Code 34-23-1-2(c)(2)(B).

Curtis asks this court to amend its scheduling order to allow him to include a prayer for punitive damages in his complaint. Simultaneously, he requests a determination that Tennessee law applies to that prayer for relief. Curtis requests that the court make this choice of law determination first, arguing that until the court does so, his motion to amend is not ripe. (Pl.'s Mot. to Amend 9–10.) He cites no authority for this proposition, however. TransCor contends that the choice-of-law issue becomes relevant only if the court grants Curtis' motion to amend. (Dkt. No. 153 ("Def.'s Obj. to Pl.'s Mot. to Amend") ¶ 1.) The court will turn first to the motion to amend.

## MOTION TO AMEND

A review of Curtis' original complaint, compared to his proposed amended complaint, shows that the factual allegations are identical, but he is seeking to add an allegation specifically labeling these acts as "reckless." (*Compare* Dkt. No. 1, Ex. A., *with* Dkt. No. 143, Ex. 1). In his proposed First Amended Complaint, Curtis adds a paragraph alleging that: "Transcor's [sic]

conduct set forth herein was reckless when it became aware of, but consciously disregarded a substantial and unjustified risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would have exercised under all the circumstances." (Dkt. No. 143, Ex. 1 ("Prop. First Am. Compl." ¶ 16.).) Plaintiff also added a prayer for punitive damages to his request for relief in both Count I, alleging wrongful death, and Count II, a survival action. (*Id.* at p. 4.)

## LEGAL STANDARD

Generally, a motion for leave to amend a complaint is decided under Fed. R. Civ. P. 15(a)(2), which provides the court should "freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). However, when a party seeks leave to amend his complaint after the date set in the court's scheduling order, as Curtis does, the court must first consider whether good cause exists for modifying that order under Fed. R. Civ. P. 16(b)(4) before considering whether to grant leave to amend. *Alioto*, 651 F.3d at 719–20. The primary consideration in determining whether good cause exists to modify a scheduling order is the diligence of the party seeking amendment. *Id.* at 720.

Both sides treat Curtis' motion to amend as one governed by this two-step process. Neither party, however, addresses the impact of Fed. R. Civ. P. 54(c), which provides that, except in the case of a default judgment, "every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *See Back Doctors Ltd. v. Metropolitan Prop. and Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011) (citing Rule 54(c) and holding that a plaintiff is not required to amend his complaint to recover damages otherwise recoverable under the substantive law).

4

## ANALYSIS

The court will first consider whether good cause exists to modify the scheduling order in this case. In arguing that he acted with the requisite diligence, Curtis notes that when this suit was filed in Illinois, it did not include a prayer for punitive damages because Illinois law does not allow the pleading of punitive damages in an initial complaint. (Pl.'s Mot. to Amend 7.) Curtis acknowledges that once the lawsuit was removed to this court that provision no longer applied, but contends that at the time the suit was removed, the evidence indicated that TransCor's negligent acts occurred in Indiana and Illinois, neither of which allows punitive damages. (*Id.* at 8.)

In particular, Curtis contends that TransCor did not consent to the deposition of the coroner until July 7, 2011, or make its employees available for deposition until June 30, 2011. Curtis contends that he did not obtain evidence that it was TransCor management's decision to continue the trip even though it knew the air conditioning was not functioning in the van until June 30, 2011, fifteen days after the deadline to amend the pleadings passed. It was on that date that Curtis also obtained evidence that it was TransCor management's decision to take an unconscious Joseph to the prison in Terre Haute rather than to a nearby hospital, Curtis contends. (*Id.* at 8–9.)

TransCor argues that Curtis has not shown diligence because the motion to amend came eights months after the deadline to do so and one month after the discovery and dispositive motion deadlines. (Def.'s. Obj. to Mot. to Amend 2.) TransCor additionally argues that Curtis had the information needed to amend his complaint well prior to filing his motion to amend on

February 14, 2012. The court agrees.

In particular, TransCor produced a number of significant documents on April 15, 2011, prior to the deadline for amending the pleadings, including: (1) the company's policies in regard to medical emergencies;[1] (2) a letter in which TransCor's CEO, J. Stephen Kennedy, praised the conduct of the employees involved in handling the incident; (3) records showing that company management in Tennessee was advised at 7:42 a.m. on the date of the incident that the air conditioning was not working in the transporter, but directed its agents to continue the trip;[2] (4) and a safety report filed in Tennessee by a TransCor employee after Joseph's death in which the employee indicated that TransCor vehicles were not properly inspected after trips. (Def.'s Obj. to Mot. to Amend 4–6.) Additionally, counsel for Curtis inspected the transporter on May 6, 2011, prior to the deadline for amending the complaint. (*Id.* at 4.)

Significantly, Curtis' theory of liability has not changed since the filing of his initial complaint on May 26, 2010. In it, he alleged that TransCor employees learned that Joseph was in distress due to heat exposure while in Illinois and failed to take appropriate action. (Pl.'s Compl. ¶ 10–11.) He also alleged that TransCor failed to inspect or maintain the vehicle, failed to properly train its employees, and ignored statements from other prisoners that Joseph was in distress. (*Id.* at ¶15.) Curtis seems to argue that he could not file this motion until he obtained enough evidence to meet Tennessee's requirement of "clear and convincing" evidence in order

---

[1] The parties disagree over the interpretation of this policy, but Curtis contends that it shows that TransCor employees were required to contact Trip Management in TransCor's Tennessee office prior to dialing 911.

[2] TransCor contends that the decision to continue to Indiana was made because it would have taken just as long to drive another transporter to the van's location to switch vehicles. TransCor also contends that only one of two air conditioning units malfunctioned during the trip. However, the court cannot resolve these factual disputes.

to obtain punitive damages, but he cites no authority for this proposition. (Pl.'s Mot. to Amend 9.) Given that Curtis' theory of the case has not changed, and that he had at least a significant portion of the evidence relevant to his punitive damages claim prior to the deadline for amending his pleadings, this court cannot find that Curtis was diligent in moving to amend his complaint. Consequently, he cannot show good cause to amend this court's scheduling order, so his motion to amend his complaint is denied. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (affirming the denial of leave to amend seven months after the deadline and less than a month before discovery was to close).

Nonetheless, the court is compelled to note that its ruling does not necessarily foreclose the recovery of punitive damages in this case, given the court's determination below that Tennessee law should apply to such a request for relief. Requests for punitive damages are not claims, and, as noted above, under Fed. R. Civ. P 54(c) a final judgment should grant the prevailing party the relief to which he is entitled, even if that party has not demanded that relief in his complaint. This rule is to be liberally construed, but it has limitations. *Kaszuk v. Bakery and Confectionery Union and Indus. Int'l Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986). In particular, the court may consider whether the opposing party would be prejudiced, such as by a substantial increase in its potential liability. *Id.* Given that neither party has addressed the implications of this rule, the court is reluctant to decide its application without further briefing by the parties.

The court notes, however, that it appears that even without an amendment, punitive damages may be available under the substantive law of Tennessee. As discussed above, Curtis' proposed amended complaint did not include any new factual allegations, but merely labeled the

7

existing allegations "reckless" and included a request for punitive damages in the prayer for relief. Plaintiff's complaint includes factual allegations that go beyond mere negligence, including its allegations that TransCor employees ignored indications that Joseph was in distress. (Pl.'s Compl. ¶ 10–11.) In fact, as alleged in the complaint, Joseph's manner of death is listed in the autopsy report as homicide. (*Id*. at ¶ 14.) Given that the court finds that Tennessee law should apply to the punitive damages claim, the parties are directed to prepare briefs on the application of Rule 54(c) as part of their briefing on the remaining choice-of-law issues in this case. Dispositive motions on the choice-of-law issues are due April 20, 2012, with responses due April 27, 2012.[3] The court will provide a ruling at the final pretrial conference on May 2, 2012.

## CHOICE OF LAW AS TO PUNITIVE DAMAGES

Curtis asks this court to apply the concept of "depecage" to find that Tennessee law applies to the issue of punitive damages because the law of that state has the most significant relationship to the punitive damages issue. (Pl.'s Choice of Law Mot. 8.) Defendants argue that applying Illinois choice of law principles, as this court must, compels a finding that the punitive damage laws of Illinois or Indiana apply. (Dkt. No. 152 ("Def.'s Obj. to Choice of Law Mot.") 2.) As noted above, both sides acknowledge that neither Illinois nor Indiana allows for the imposition of punitive damages in wrongful death cases.

## LEGAL STANDARD

When a court is sitting in diversity, as this court is, it must apply the substantive law of the forum state, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

---

[3] The court notes, however, that Curtis already has filed a motion to apply Illinois law to the issues of liability and compensatory damages. (Dkt. No. 156.)

313 U.S. 487, 497 (1941). Illinois follows the choice of law methodology of the Restatement (Second) of Conflict of Laws. *Townsend v. Sears, Roebuck & Co*., 879 N.E.2d 893, 898 (Ill. 2007). The Illinois Supreme Court has emphasized that the analysis must begin by identifying the conflict. *Id.* Choice-of-law issues are then resolved on an issue-by-issue basis, with the Illinois courts endorsing the concept of depecage, which involves splitting the case into individual issues, each subject to a separate choice of law analysis. *Id.* at 901.

Under Illinois law, there typically is a strong presumption that the law of the state where the injury occurred governs in personal injury cases, including wrongful death actions. *Id.* at 902–03; Restatement (Second) of Conflict of Laws, § 175 (1971) ("Second Restatement"). That presumption may be overcome by showing that another state has a more significant relationship to the issue under consideration. *Townsend*, 879 N.E.2d at 903. In making that assessment, Illinois courts consider the principles set forth in sections 6 and 145 of the Second Restatement. *Id.*

The principles of § 6 include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic principles underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Townsend*, 879 N.E.2d at 900 (citing Second Restatement § 6, at 10 (1971)). The relevant contacts identified in § 145 that the court should take into account in applying these principles are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of

9

business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.* at 901 (citing Second Restatement, § 145(2), at 414).

## ANALYSIS

The relevant conflict identified by the parties in this motion concerns only the availability of punitive damages. Curtis identifies five potential states in which negligent conduct occurred: Kansas, Missouri, Illinois, Indiana, and Tennessee. He contends that most of the negligent conduct occurred in Illinois, Indiana, and Tennessee, however. He also points out that Joseph was domiciled in Iowa, while his son, Curtis, is domiciled in Minnesota. (Pl's. Choice of Law Mot. 8.) Neither side makes an argument for anything other than Illinois, Indiana, or Tennessee law to be applied to this issue, but the court will consider all of the relevant contacts.

1. The § 145 Factors

    A. **Place of Injury**

As noted, throughout this litigation, the parties have dispute whether Joseph died in Illinois or Indiana. (*See* Dkt. No. 32.) Regardless, it seems clear that Joseph was injured in Illinois and died either in Illinois or in Indiana, neither of which allow for the imposition of punitive damages in a wrongful death action.[4] Curtis argues that it was merely fortuitous that his father died in a state that does not allow punitive damages. The TransCor van's route took it through Kansas, Missouri, and into Illinois, where three prisoners were dropped off at the federal prison in Greenville. The transport van then traveled through Illinois and into Indiana, where its destination was the federal prison in Terre Haute. (Obj. to Choice of Law Mot. 9.)

---

[4] Curtis does assert, however, that there is some evidence that his father first became ill when the transport van was in Missouri. (Choice of Law Mot. 10.)

10

The court notes that Kansas, where the trip began, does not allow punitive damages in wrongful death actions, but does award them in survival actions. *Lake v. Res-Care Kansas, Inc.*, 98-1019-JTR, 2002 WL 32356436, at *1 (Kan. 2002). Missouri, through which Joseph passed on a portion of his journey, does allow for additional damages for aggravating circumstances, which are akin to punitive damages and require evidence that the defendant had knowledge of a potentially dangerous situation, but failed to act to prevent it. *Kilmer v. Browning*, 806 S.W.2d 75, 80 (Mo. App. Ct. 1991).

Curtis likens this case to airplane crash cases in which the location of the injury is entirely fortuitous. In such cases, courts have placed little weight on the place of injury in determining what state's punitive damages law to apply. The Seventh Circuit summed up this reasoning in *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 615 (7th Cir. 1981), where the court noted:

> Because the place of injury is much more fortuitous than the place of misconduct or the principal place of business, its interest in and ability to control behavior by deterrence or punishment, or to protect defendants from liability, is lower than that of the place of misconduct or principal place of business.

Comment (e) to § 145 of the Second Restatement also touches upon this issue. It provides that in personal injury cases, the place of injury plays an important role the selection of the applicable law as to most issues. However, the comment adds this qualification: "Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue." Second Restatement §145 cmt. e.

11

In this case, the place of injury was not fortuitous in the way that it is when a plane drops out of the sky "and where it comes to rest depends on the speed of the craft, its trajectory, the nature and timing of the accident, prevailing winds, and so on." *Boomsma v. Star Transp., Inc.*, 202 F. Supp. 2d 869, 875 (E.D. Wis. 2002). TransCor regularly transports prisoners to facilities in Indiana and Illinois. In 2009, TransCor made 15 trips to the federal prison in Greenville, Illinois, and 11 to the federal prison in Terre Haute, Indiana. (Def.'s Obj. to Choice of Law Mot. 4). Illinois and Indiana have an interest in regulating the conduct of a company that regularly moves through their states as part of its operations. However, in another sense, the location of the injury was somewhat fortuitous in that Joseph had no choice as to how and when he was transported or where he became ill. Nor is it solely TransCor's conduct in Illinois and Indiana that is at issue here. Curtis alleges that his father's death was the culmination of oversights and poor decisions by TransCor employees in Tennessee, Kansas, Missouri, and Illinois.

TransCor relies heavily on *Townsend* for the proposition that this court should apply a presumption that Illinois or Indiana law applies to the punitive damages issue, but *Townsend* was not a wrongful death case and involved substantially different facts and circumstances than those at issue here. In *Townsend*, the mother of a Michigan child, injured in a lawnmower accident at the family's home in Michigan, brought a products liability suit against Sears, which is headquartered in Illinois. 879 N.E.2d at 896. In resolving conflicts of law between Illinois and Michigan, the Illinois Supreme Court determined that Illinois had a legitimate interest in the liability to be imposed on its corporate citizens, but Michigan had an equal interest in affording remedies to victims of torts that occur in its state. *Id.* at 907–09. Given that these interests were

a wash, the court applied the general presumption that the law of the place of injury applies in a personal injury suit. *Id.* In this case, however, Joseph was not a resident of Illinois, and the location of his injury was at least somewhat fortuitous, which lessens the weight the court places on the site of the injury as a factor in determining which state's punitive damages law to apply.

### B. The Place Where the Conduct Causing the Injury Occurred

The parties dispute how much of the conduct at issue here occurred in Illinois or Indiana, versus Tennessee.[5] Curtis points to this allegedly negligent conduct that occurred in Tennessee: (1) TransCor management was informed at 7:42 a.m. that the air conditioning unit in the van was not working, but directed its agents to continue to Terre Haute; (2) TransCor had no policy requiring a thermometer in the prisoner compartment to monitor temperature; (3) TransCor failed to train its agents how to identify heat-related illnesses; (4) TransCor policy required agents to call Trip Management before calling 911;[6] (5) Trip Management at TransCor's Operations Center in Tennessee did not answer the telephone when agents called from Indiana to advise them of Joseph's illness; (6) Charles Westbrook, TransCor's director of operations, directed agents to continue to the prison after being notified of the emergency; (7) a TransCor employee filed a safety report in Tennessee after the incident indicating that vehicles were not being properly maintained; and (8) After Joseph's death, J. Stephen Kennedy, TransCor's chief

---

[5]As a preliminary point, the court notes Curtis has attached to his motion a list of the allegedly negligent and reckless conduct and the location where it occurred. (Choice of Law Mot., Exs. 1,2.) TransCor seeks to strike these exhibits as improper because they are not documentary evidence, and because with them, Curtis' brief exceeds 15 pages. The court has discretion to strike these exhibits, but sees no reason to do so, given that TransCor had the opportunity to respond to the information listed therein.

[6] Again, as noted above, the parties disagree over the substance of this policy, with TransCor arguing that agents were not required to call Trip Management first in the event of an emergency.

executive officer, sent a letter "ratifying" the conduct of its agents during the incident. (Choice of Law Mot. 4–5.)

TransCor points out that in his response opposing a change of venue, Curtis argued that "the majority, if not all, of the events and omissions giving rise to Plaintiff's claims, namely Joseph Curtis' considerable pain, suffering, and ultimate death, occurred in Illinois." (Dkt. No. 19 ("Resp. in Opp. to Mot. to Transfer") 1.) The court agrees that counsel for Curtis should have acted with more diligence in identifying and raising the issue of the application of Tennessee law to the issue of punitive damages, but the court declines to deny its application on that basis.

Regardless, TransCor argues that most of the allegedly negligent conduct occurred in Illinois and Indiana through the actions of the company's employees. Further, TransCor contends that one of the prisoner compartment's two air conditioning units failed in Illinois, while Curtis points to prisoner testimony that the prisoner unit of the van lacked air conditioning from the time the trip began in Kansas. TransCor also contends that its agents did not learn that Joseph was in distress until they were in Indiana, but argues that even if they learned of his condition in Illinois, as Curtis contends, the alleged failure to provide medical assistance did not occur in Tennessee. TransCor additionally contends that this court must take into account its allegation that Joseph was negligent in not informing any TransCor employee that he was ill prior to 11:07 a.m. on the day he died, and that medical personnel at the Terre Haute prison delayed in providing medical treatment once the transport van arrived. (Obj. to Choice of Law Mot., Exs. 5, 6.) All of this allegedly negligent conduct contributing to Joseph's death occurred in Illinois and Indiana. Not surprisingly, prison officials contend they were not told the severity of Joseph's condition, or they would have acted with more haste. (Choice of Law Mot. 4.)

14

The court cannot and need not resolve these numerous factual disputes, however. It is clear that some of the allegedly negligent conduct at issue here occurred in Illinois and Indiana, while some occurred in Tennessee. Alleged misconduct occurred in all three of these states, so all three have an interest in the application of their law as to the imposition of punitive damages in wrongful death cases. This factor, in and of itself, does not point to the application of one interested state's law over another's.

C. **Residence of the Parties**

TransCor is headquartered in Nashville, Tennessee, which also is the location of its maintenance facility, the site of its employee training programs, and the location of the company's Trip Management office. (Choice of Law Mot. 7.) Joseph was domiciled in Iowa. (Choice of Law Mot. 8.)[7]

Curtis argues that Tennessee, as the principal place of business of TransCor, has an interest in punishing the wrongdoing of its corporate citizens and deterring others from committing similar misconduct. (Choice of Law Mot. 12–13.) TransCor attempts to minimize the significance of this interest by noting that it does business in other states, including Illinois and Indiana. While this is true, it is significant that TransCor chose to locate its headquarters in a state that allows for the imposition of punitive damages in wrongful death cases. Additionally, TransCor's transport vans were maintained in Tennessee, its workers were trained there, and at least some of the decisions in regard to the handling of the broken air conditioner and Joseph's Illness were allegedly made by company officials in Tennessee. This factor weighs in favor of

---

[7]Although Curtis does not seek the imposition of Iowa law, the court notes that such damages are recoverable under Iowa law in instances of willful, wanton, or malicious conduct. *State v. Izzolena*, 609 N.W.2d 541, 546 n.2 (Iowa 2000).

15

the application of Tennessee law.

D.      **Place Where Relationship Between the Parties Was Centered**

The final § 145 factor for consideration is the place where the relationship between the parties is centered. TransCor argues this place is Illinois, because "the relationship between Plaintiff and TransCor is centered around [Joseph's] death and ultimately this lawsuit." (Obj. to Choice of Law Mot. 10.) Its not clear to the court, however, that TransCor and Joseph's relationship was "centered" in any one location. Joseph's contact with TransCor's agents took him through four states. It is a stretch to say that TransCor's relationship with Joseph was centered in Illinois or Indiana merely because that is where Joseph became deathly ill. As such, the court affords little weight to this factor, and concludes that, based on the preceding three § 145 factors, Tennessee law has the strongest connection to the facts and circumstances of this case as it relates to the imposition of punitive damages given that Tennessee was both the site of at least some of the alleged misconduct and is site of TransCor's headquarters. As noted above, Illinois and Indiana have an interest in the application of their punitive damages law to a company that regularly does business in their states, but that interest is lessened where Joseph was not a resident of either state, and where the location of Joseph's injury was to a certain degree fortuitous. As a whole, the court finds that Tennessee has a stronger connection to the facts and circumstances of Joseph's death than does Illinois or Indiana, and that this connection is sufficient to overcome any presumption that the law of the place of injury should apply. Although it is a close question, the court finds that Tennessee law should apply to the determination of punitive damages. The court will next test this determination in light of the policy factors of § 6.

16

2.   The § 6 Factors

In a personal injury case, the protection of justified expectations and certainty, predictability and uniformity of result are only minimally implicated. *Townsend*, 879 N.E.2d at 906. Nor are the needs of the interstate system implicated, except to the extent that the court should apply the law of the state with the most significant relationship to the issue under consideration. *Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1008–09 (Mont. 2000) (citing Second Restatement §6(2) cmt. d).

Additionally, the court's consideration of the basic policies underlying the particular field of law is only minimally relevant here because this consideration is meant to be applied in cases in which the policies of two states are largely the same. *Phillips*, 995 P.2d at 1014 (Mont. 2000) (citing Restatement Second §6(2) cmt. h). In those instances, the court is to apply the law of the state that will best achieve that underlying policy. *Phillips,* 995 P.2d at 1014. Here, given that the policy of Illinois and Indiana as to the imposition of punitive damages in wrongful death cases is contrary to Tennessee's policy, this consideration carries little weight. Additionally, the court notes that while considerations of ease in the determination and application of the relevant law might favor the application of Illinois law, the court does not afford this factor much weight, given that the parties and the court are capable of determining and applying the law of Tennessee if appropriate. The court, therefore, will consider whether its determination that Tennessee law should apply is affected by (a) the relevant policies of the forum; and (b) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue. *Townsend*, 879 N.E. 2d at 906–907.

Here, Illinois and Indiana have a policy that limits liability for defendants in wrongful death actions by not allowing for the imposition of punitive damages. Illinois courts have repeatedly held that except as allowed by statute and in the rare instances in which the plaintiff has no other remedy, punitive damages are not allowed in wrongful death and survival actions. *See Marston v. Walgreen Co.*, 907 N.E.2d 851, 857 (Ill. App. Ct. 2009). Similarly, the Indiana courts have held that it is within the province of the state's legislature to decide whether to allow punitive damages in wrongful death cases, and that because the legislature has not done so, they are not recoverable. *Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 763 (Ind. 2001).

Tennessee, however, has chosen to allow for punitive damages in wrongful death cases. TransCor points out that the Tennessee legislature recently passed a statute limiting punitive damages to two times the compensatory damage award or $500,000, whichever is greater. Tenn. Code Ann. § 29-39-104. The statute, however, does not apply to Curtis' case because it affects only those actions seeking to recover for injuries accruing on or after Oct. 1, 2011. *Id.* Furthermore, the court notes that the Tennessee legislature could have opted to forbid punitive damages in wrongful death cases altogether, as the Indiana legislature has done, but it chose not to do so. Tennessee continues to have a policy that punitive damages in wrongful death actions are appropriate under certain circumstances, and this policy is particularly relevant in this case, where a business headquartered in Tennessee is accused of committing misconduct in that state that caused the death of a prisoner in its care.

The court finds it significant that the issue here is the imposition of punitive damages, which are meant to punish wrongdoing and deter future, similar misconduct. *See Smith v. I-Flow*

*Corp.*, 753 F. Supp. 2d 744, 748 (N.D. Ill. 2010). Punitive damages are not meant to compensate a plaintiff for the damage he or she has suffered. *Id.* "This suggests that a state in which a defendant is domiciled has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred." *Id.*

The commentary to the Second Restatement alludes to this consideration:

> [A]n important factor in determining which is the state of most significant relationship is the purpose sought to be achieved by the rule of tort law involved. If this purpose is to punish the tortfeasor and thus to deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest and that its local law should control than if the tort rule is designed primarily to compensate the victim for his injuries. . . . In the latter situation, the state where the injury occurred would seem to have a greater interest than the state of conduct. This factor must not be over-emphasized. To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person. Undoubtedly, the relative weight of these two objectives varies somewhat from rule to rule, but in the case of a given rule it will frequently be difficult to determine which of these objectives is the more important.

Second Restatement § 146 cmt. e. Although the *Townsend* court warned against placing too much emphasis on this factor, 879 N.E.2d at 909, it is particularly relevant in these circumstances, where Joseph was not a resident of Illinois or Indiana, and had no choice as to when or how he was transported through those states. In sum, an analysis of the § 6 factors does not change this court's conclusion that the law of Tennessee should apply to the punitive damages issue.

## CONCLUSION

For the reasons stated herein, the court denies "Plaintiff's Motion to Amend Complaint and Scheduling Order to Add a Punitive Damage Claim under Tennessee Law" (Dkt. No. 143). However, the court reserves ruling as to whether punitive damages are nonetheless available under the substantive law of Tennessee under Fed. R. Civ. P. 54(c). The parties are to brief this

19

issue as part of their briefing on the remaining choice-of-law issues in this case. Dispositive motions on the choice-of-law issues are due April 20, 2012, with responses due April 27, 2012. The court will provide a ruling at the final pretrial conference on May 2, 2012.

        ENTER:

        _____
        JAMES F. HOLDERMAN
        Chief Judge, United States District Court

Date: March 29, 2012