# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 4570 | **DATE** | 11/5/2012 |
| **CASE TITLE** | | Curtis vs. TransCor | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section of this order, "Plaintiff's Amended Motion to Bifurcate Trial or Alternatively, to Dismiss Without Prejudice the Wrongful Death Claim" [218] is denied. Status hearing remains set for 11/8/2012 at 9:30 a.m. for purposes of scheduling additional dates with respect to the upcoming 4/8/2013 jury trial. Plaintiff's previous "Motion to Bifurcate Trial" [214] is denied as moot. The parties are again encouraged to discuss settlement.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

On October 2, 2012, this court scheduled a one-week jury trial to commence on April 8, 2013 in this case. Pending before the court is "Plaintiff's Amended Motion to Bifurcate Trial or Alternatively, to Dismiss Without Prejudice the Wrongful Death Claim." (Dkt. No. 218.) TransCor filed its response to Plaintiff's motion on October 23, 2012 (Dkt. No. 220), and Plaintiff filed his reply on October 30, 2012 (Dkt. No. 221). The question of bifurcation is therefore fully-briefed and ready for adjudication by the court.

The court begins its analysis by outlining Plaintiff's proposed bifurcation, which would involve two separate jury trials.

In Plaintiff's proposed "Trial I," the jury would be asked to determine: (1) TransCor's liability on Plaintiff's survival action and Plaintiff's wrongful death action; (2) the amount of compensatory damages, if any, for the survival action only (e.g. Joseph Curtis's pain and suffering); (3) TransCor's liability for punitive damages; and (4) the amount of punitive damages to be awarded, if any.[1] (Dkt. No. 219 at 5.)

---

[1] Pursuant to previous choice-of-law rulings in this case, Plaintiff's survival action and wrongful death action are both governed by Illinois law while the issue of punitive damages is governed by Tennessee law. Although Tennessee law provides that, "upon motion of the defendant," the court "shall bifurcate" the trial to provide "an immediate, separate proceeding" for purposes of determining the amount of punitive damages, *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992), TransCor has conditionally declined to seek bifurcation of the punitive damages amount at this time. (*See* Dkt. No. 220 at 6 n.22 (reserving the right to seek bifurcation in the event Plaintiff is permitted to introduce evidence of TransCor's parent company's corporate wealth).)

In the event the jury in Trial I were to find TransCor liable on Plaintiff's wrongful death action, the jury in Plaintiff's proposed "Trial II" would then be asked to determine the amount of compensatory damages appropriate to compensate Plaintiff for the "loss of society, grief, sorrow, and mental suffering that he incurred as a result of the wrongful death of his father." (*Id.* at 2.) Plaintiff envisions that Trial II would include "evidence relevant only to Curtis' relationship with his son [Plaintiff]," including the evidence that is potentially prejudicial to the Plaintiff described below. (*Id.* at 3.)

Federal Rule of Civil Procedure 42(b) governs the question of bifurcation. Rule 42(b) states:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). The Seventh Circuit has interpreted Rule 42(b) to authorize the separation of claims or issues for trial "if the separation would prevent prejudice to a party or promote judicial economy . . . as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). "The court must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). The party seeking bifurcation "bears the burden of demonstrating that concerns of judicial economy and prejudice weigh in favor of bifurcation." *Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp.2d 834, 837 (N.D. Ill. 2006) (citing *Real v. Bunn–O–Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000)).

At issue are two categories of evidence that Plaintiff argues are "unfairly prejudicial" and "will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." (Dkt. No. 219 at 3 (quoting *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003)). The first category is "[e]vidence regarding Curtis' occupation, crime, conviction, sentence, [and] parole." (Dkt. No. 219 at 4.) The second category is evidence of "other bad acts, including [Curtis's] relationship with Richard Maldinado [sic] or others in master/slave sexual relationship," Curtis's sexual orientation, Curtis's communications regarding bestiality and master/slave sexual relationships, "or other deviant behavior, which the Court deems more probative than prejudicial of [Plaintiff's] damages." (*Id.* at 4, 6.) It is undisputed that Curtis was a 66-year-old child therapist serving a five-year sentence for possession of and receiving child pornography, to be followed by ten years of supervised release, at the time of his death.

At this stage in the litigation, the court has made no rulings on the admissibility of any evidence for trial purposes, and the court is not now in a position to rule whether the probative value of any particular proposed exhibit is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The court therefore assumes, *without deciding*, that the potentially-prejudicial exhibits identified by Plaintiff and TransCor — DX 17-28 (Curtis's internet chat sessions); DX 29 (basic sex slave rules); DX 30-39, 41-43, 45-69, 71-84 (Curtis's crimes and related accusations); DX 40 (sexually explicit photos of two male individuals); DX 44 (sexually explicit video of Richard Maldonado); and DX 95 (love letters between Curtis and Maldonado) — are admissible as relevant to Plaintiff's claimed damages in his wrongful death action. *See Watson v. South Shore Nursing & Rehab. Center, LLC*, 965 N.E.2d 1200, 1208 (Ill. App. Ct. 1st Dist. 2012) (generally explaining relevance of "evidence that the next of kin were estranged from the deceased"); *see also* 11/2/2011 Tr. at 8:10-11 (Magistrate Judge Schenkier's observation that this type of evidence "would [probably] be very troubling" and may be relevant "at least to the extent plaintiff knew about these

things"). The court also accepts that there is an obvious danger of unfair prejudice to Plaintiff if these exhibits were to be published to the jury.

One problem with Plaintiff's proposed bifurcation is that this same evidence is also potentially relevant to the question of punitive damages. Tennessee Pattern Jury Instruction 14.56, attached as Exhibit 2 to Plaintiff's motion, instructs the jury to consider "the impact of the defendant's conduct on the plaintiff." T.P.I. Civil 14.56; *see also McLemore v. Elizabethton Medical Investors, Limited Partnership*, No. E2010-01939-COA-R3-CV, 2012 WL 2369350, at \*9 (Tenn. Ct. App. June 22, 2012) (identifying "[t]he impact of defendant's conduct on the plaintiff" as one of the "*Hodges* factors" to be considered in an award of punitive damages). It is TransCor's position that Plaintiff's proposed bifurcation would not eliminate the potentially-prejudicial evidence from Trial I, because "the effect of Joseph Curtis' death on [Plaintiff] is admissible with respect to an award of punitive damages." (Dkt. No. 220 at 9.) Again, the court reserves ruling on the admissibility of any particular proposed exhibit at this stage of the litigation. As a general matter, however, the court accepts TransCor's suggestion that evidence of an estranged relationship between Plaintiff and Curtis is potentially relevant to "the impact of defendant's conduct" on Plaintiff, in the same way the potentially-prejudicial exhibits may be relevant to Plaintiff's wrongful death damages. To the extent the potentially-prejudicial evidence is relevant to both punitive damages and wrongful death compensatory damages, there would be no efficiency realized by Plaintiff's proposed bifurcation. Moreover, TransCor would be prejudiced by the additional time and expense required to select a second, separate jury for purposes of presenting any such duplicative evidence.

TransCor further argues that Plaintiff's proposed bifurcation "denies TransCor due process." (Dkt. No. 220 at 8.) The United States Supreme Court has recognized that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Accordingly, trial courts assessing an award for punitive damages "must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426. Plaintiff's proposed bifurcation would have the jury in Trial I determining the appropriate amount of punitive damages to be awarded against TransCor *before* the total amount of compensatory damages had been determined. Plaintiff argues that the court "can still protect any of TransCor's due process concerns" by later adjusting the punitive damages award, if necessary. (Dkt. No. 221 at 4.) The court is not persuaded that this approach is procedurally appropriate. *See State Farm*, 538 U.S. at 425 ("The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff."). Regardless, the court finds that Plaintiff's proposed approach fails to comport with Tennessee law. In *Hodges*, the Supreme Court of Tennessee "reexamine[d], and modif[ied], the manner in which punitive damages are awarded in Tennessee." *Hodges*, 833 S.W.2d at 900. As part of this effort, the court "announce[d] a new procedure aimed at providing specific criteria to guide a jury in deciding whether to award punitive damages and, if so, in what amount." *Id.* The court specifically instructed that, "[d]uring the first phase" of a bifurcated trial on punitive damages, "the factfinder shall determine . . . liability for, and the amount of, compensatory damages." *Id.* at 901. During the second phase, "[i]f the factfinder finds a defendant liable for punitive damages, the amount of such damages shall then be determined in an immediate, separate proceeding." *Id.* Plaintiff's proposed bifurcation conflicts with the detailed approach set forth in *Hodges*, and this court finds that Tennessee law would not permit a jury to assess punitive damages based on TransCor's liability for Plaintiff's wrongful death action before assessing compensatory damages for the same claim. In short, the court agrees with TransCor that Plaintiff's proposed bifurcation "will not work." (Dkt. No. 220 at 7.)

| STATEMENT |
|---|

For the reasons set forth above, the court rejects Plaintiff's proposed bifurcation as improper in light of the facts and circumstances of this case. Additionally, for the reasons set forth in *Sarff v. Farmco, LLC*, No. 11-3153, 2011 WL 3489842, at *1-2 (C.D. Ill. Aug. 10, 2011), the court agrees with TransCor that Rule 41(a)(2) does not permit Plaintiff to voluntarily dismiss only one claim in his lawsuit against TransCor. "Plaintiff's Amended Motion to Bifurcate Trial or Alternatively, to Dismiss Without Prejudice the Wrongful Death Claim" (Dkt. No. 218) is therefore denied.

Nothing in this ruling should be construed as reflecting any preference for or against the admissibility of any evidence at trial. The court will assess the merits of any motions in limine once they are filed with the court and fully-briefed by the parties, and at that time will weigh the relevancy and potential prejudice of specific evidence as appropriate under the Federal Rules of Evidence.